UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT I.,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                Defendant.

CASE NO. C18-0445-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1963.[1] He completed the tenth grade and previously worked as a tile finisher. (AR 103, 107.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed an SSI application on November 12, 2014, alleging disability beginning January 1, 2014. (AR 249.) His application was denied initially and on reconsideration. Prior SSI and DIB applications were denied November 6, 2012. (AR 125-44.)

On August 8, 2016, ALJ Keith Allred held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 91-124.) At hearing, plaintiff amended his alleged onset date to the November 12, 2014 protective filing date. (AR 121-22.) On November 1, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 26-44.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on February 12, 2018 (AR 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: head and neck soft tissue pain; spine disorder; mild osteoarthritis of the right knee in connection with obesity II; mild lumbar degenerative disc disease; gastroesophageal reflux disease; affective disorder; anxiety disorder; and personality disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for up to six of eight hours per workday with normal rest breaks; never crawl or climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, bend, squat, kneel, and crouch; perform the basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; deal with changes in a routine work setting; and requires work involving only occasional contact with the public, supervisors, and coworkers. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a cleaner housekeeping, marker, and bagger.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering the prior ALJ decision, medical opinions, lay witness testimony, symptom testimony, and at steps two, three, and five. He requests remand for an award of benefits or, alternatively, further administrative proceedings. The Commissioner argues the decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

Social Security regulations applicable to plaintiff's claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including nurse practitioners, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[2]

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a physician where it is not contradicted by another physician, or specific and legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount

---

[2] New regulations, applicable to claims filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.     Jeffrey Nelson, MD

Treating physician Dr. Jeffrey Nelson completed a Psychiatric Review Technique form on July 28, 2016.  (AR 1294-1307.)  He opined plaintiff met listings 12.04 (affective disorders) and 12.06 (anxiety disorders), meeting the "B" criteria with moderate difficulties in activities of daily living, extreme limitation in social functioning, marked difficulties in concentration, persistence, or pace, and moderate limitation in episodes of decompensation, each of extended duration.  (AR 1294, 1304.)  With respect to the "C" criteria of the listings, Dr. Nelson found even a minimal increase in mental demands or change in environment would cause decompensation, a current history of one or more years' instability to function outside a highly supportive living arrangement and the need to continue such arrangement, and a complete inability to function independently outside the home.  (AR 1305.)  In a Mental Medical Source Statement, Dr. Nelson identified occasional to frequent limitations in areas of understanding and memory and adaptation, and occasional to constant limitations in areas of sustained concentration and persistence and social interaction.  (AR 1308-09.)

The ALJ gave no weight initially to Dr. Nelson's opinion of disability because that decision is reserved to the Commissioner.  (AR 40.)  He further found the opinion not consistent with the medical records.  A November 2014 treatment note from Dr. Nelson showed that, although upset about his SSI denial, plaintiff had normal mental status examination (MSE) findings, with the exception of angry mood and impaired short-term memory.  (AR 1194.)  He had consistently normal MSEs with Dr. Nelson across a long period of time.  (AR 462, 466, 470, 474, 478, 482, 1154, 1158.)  In fact, plaintiff's mental health condition improved over time and was stable by

March 2016.  (AR 1153-54, 1161-62.)  Plaintiff had an improved mood, had returned from helping his father in Fresno, reported it felt good to be back on a motorcycle, and noted he had a period without medication and became angry and irritable.  (AR 1153.)  It appeared plaintiff had ridden his motorcycle to Fresno, California and enjoyed the ride, but his symptoms increased when he ran out of his medications.  (AR 40.)  On his return, plaintiff was cooperative, well groomed, sleeping well, had no medication side effects, normal gait and station, and, on balance, an entirely unremarkable presentation.  (AR 1154, 1158.)  The ALJ, for the same reasons, gave no weight to the assessment of occasional to constant limitations in functioning.

Social Security regulations define a "medical opinion" as a statement reflecting judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. § 416.927(a)(1).  Opinions on some issues, including whether a claimant meets a listing, is not a "medical opinion." § 416.927(d)(2).  Although considered, "the final responsibility for deciding these issues is reserved to the Commissioner."  *Id*.; SSR 96-5p.

The finding a claimant meets a listing equates to a finding of disability.  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) ("'[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'") (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  The ALJ therefore properly rejected Dr. Nelson's finding of disability as an issue reserved to the Commissioner.

Dr. Nelson did otherwise offer a medical opinion.   Because the record contained contradictory opinions from non-examining State agency psychologists Drs. Matthew Comrie and Thomas Clifford (AR 165-70, 182-87), the ALJ could reject Dr. Nelson's opinion with specific and legitimate reasons, supported by substantial evidence.  *Widmark v. Barnhart*, 454 F.3d 1063,

1066 & n.2 (9th Cir. 2006). *Cf. Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2011) (clear and convincing reasons are required to reject a treating physician's "uncontradicted opinion on the ultimate issue of disability[.]") The ALJ found inconsistency with the medical records, and inconsistency with Dr. Nelson's own treatment notes. Such inconsistencies serve as specific and legitimate reasons to discount a physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). *See also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion.").

Plaintiff rejects the ALJ's interpretation of the record as selective and inaccurate, noting the ALJ cited to numerous findings prior to the amended alleged onset date of November 12, 2014 (AR 462, 466, 470, 474, 478, 482 (December 2013 through September 2014)), and only three additional appointments in November 2014, April 2016, and June 2016 (AR 1194, 1154, 1158). Plaintiff points to other records as showing his ongoing mental health problems during the relevant time period, including his report of significant chronic short-term memory problems in November 2014 (AR 602-03), and report and presentation with a variety of mental health symptoms between February and July 2015 (AR 1181-83, 1217, 1219, 1223, 1229). In February 2016, he reported trouble shutting of his mind and lack of rapport with anyone at NA meetings (AR 1205) and, in May 2016, he reported almost getting into a fight at an NA meeting and losing a job at Ace Hardware after two days due to conflicts with co-workers (AR 1201). Finally, in June 2016, plaintiff reported being "moody and 'pissed off'" when he was out of medication for a short period. (AR 1199.) Plaintiff argues the ALJ ignored his continued, but not constant, debilitating symptoms and that Dr. Nelson's opinion is entitled to controlling weight.

The Court finds no error. The ALJ is responsible for assessing the medical evidence and

resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ rationally interpreted the evidence. The record, for example, contained other normal MSEs from Dr. Nelson during the relevant time period. (*See* AR 1170, 1174, 1178 (August through December 2015).) Also, earlier in the decision, the ALJ provided a more detailed discussion of the medical evidence. Plaintiff's mental health improved over time, and "[b]y December of 2015, the claimant reported being mentally stable and was even thinking about taking classes so that he could obtain his GED." (AR 37 (citing AR 1169).) His mental stability continued and, by March 2016, he had "'ok' sleep and appetite even though he had no money and was living with his mother" and, after a period of anger and irritability when without medication, he had a euthymic mood in June 2016, with a normal MSE. (*Id.* (citing AR 1153-54).) (*See also* AR 37 (ALJ found inconsistency with allegation of poor memory, concentration, and social dysfunction and only mild findings related to mental status by other treatment providers, including a November 2014 encounter in which plaintiff had poor attention span and concentration, but intact recent and remote memory, and intact language and fund of knowledge) (citing AR 606-07).)

The record did contain ongoing symptom reporting and some varied findings. However, it also showed improvement and contained Dr. Nelson's own positive findings, including, for example, the March 2016 finding of bipolar affective disorder in remission and "improved"

assessment (AR 1162), and the June 2016 finding of continued stability, outside of the temporary setback when he ran out of medication (AR 1153-54). Despite these findings, Dr. Nelson, in July 2016, opined plaintiff met the criteria for establishing disability and suffered from a number of frequent and constant limitations in functioning. The ALJ reasonably found the evidence from Dr. Nelson and other evidence in the record inconsistent with that conclusion.

B.    Timothy Steege, MD

On July 15, 2014, Dr. Timothy Steege conducted a craniotomy and stated plaintiff was a "disabled gentlemen" with "a history of headaches and memory loss for 10 years, and a history of bipolar disorder with fits of anger and rage, alternating with periods when he can sleep for days and have no motivation." (AR 429.)    Afterwards, plaintiff reported complications such as headaches and pain and swelling, at or near the area of surgery and extending to his left neck and upper extremity with paresthesias, and CT scans included some abnormal findings. (AR 556, 558, 588, 709.) Plaintiff avers error in the ALJ's failure to address Dr. Steege's opinion of disability and maintains the evidence of subsequent, significant deterioration of his condition supports a remand for payment of benefits.

Yet, Dr. Steege did not offer an opinion of disability. He, instead, offered this description of plaintiff in his operative indications: "This 50-year-old obese disabled gentleman from Whidbey Island reports a history of headaches and short-term memory loss for 10 years[.]" (AR 429.) In fact, Dr. Steege appears to have taken the term "disabled" from plaintiff's own report at his initial appointment a week prior. (*See* AR 407-08 ("This 50-year-old man from Freeland on Whidbey Island reports a history of headaches and short-term memory loss for the last 10 years."; "He lists his occupation as 'disabled.'")) Dr. Steege's operative findings consisted of the following: "A benign appearing meningioma was found and excised completely." (*Id.*) The ALJ

was not required to offer any reasoning associated with this evidence because it did not identify any specific functional limitations or otherwise constitute a medical opinion. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). *Accord Morgan*, 169 F.3d at 601.

Contrary to plaintiff's contention, this conclusion is not an improper *post hoc* rationalization. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (the court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") It is an appropriate explanation of why the decision does not contain an assessment of a medical opinion from Dr. Steege. The ALJ did, moreover, discuss evidence from Dr. Steege in his review of the medical evidence, such as observations of tenderness and muscle contraction and normal physical findings on examination. (AR 36-37.) The ALJ found plaintiff's allegation of headaches post-craniotomy severe enough to cause him to sleep for multiple days in a row not supported by the evidence, noting the absence of any supportive objective findings on examination by a headache specialist, and Dr. Steege's opinion the complained-of symptoms were unrelated to the craniotomy. (AR 37, 608-10.) The ALJ found Dr. Steege's findings not fully consistent with plaintiff's allegation of head pain and other symptoms so severe he could not work.

Plaintiff, at best, offers an alternative interpretation of the evidence. The ALJ's interpretation is at least equally rational and plaintiff fails to demonstrate any error.

/ / /

C.     Vicki Werve, ARNP

Treating nurse practitioner Vicki Werve completed a physical functional evaluation on November 25, 2014. (AR 551-56.) With diagnoses of neck and left shoulder impairments, lower back pain, fatigue-fibromyalgia, and depression, Werve assessed plaintiff as markedly or severely

limited in relation to basic work activities of sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. (AR 552.) She opined plaintiff is severely limited and unable to meet the demands of sedentary work. (AR 552-53.)

The ALJ gave no weight to Werve's opinion. He found it not consistent with the medical evidence, which showed only mild findings both on physical examination and in the radiographic evidence. (AR 39 (citing AR 374, 382, 606, 721, 1067, 1153-54).) He added that Werve is not an acceptable medical source. The ALJ also gave no weight to Werve's statement, on November 25, 2014, that plaintiff "has been unable to work for several years." (AR 39, 557.) While plaintiff had not worked for years, he "left his last employment voluntarily to care for his mother." (AR 39.) The ALJ found "no apparent reason" for plaintiff's "transition from the ability to work to the inability to work simply because he voluntarily left his employment to care for a loved one." (*Id*.) The record did not support a finding plaintiff has been unable to work at any level during the period at issue.

Plaintiff points to physical therapy notes dated between October and December 2014 as consistent with the opinion of Werve and showing significant limitations due to lower back pain and radicular pain down his right leg to foot. (AR 647-69.) He notes Werve's longstanding treatment and denies her status as a non-acceptable medical source suffices to discount her opinion. Plaintiff also points to significant radiographic findings including transitional lumbosacral vertebra, marked lower lumbar facet hypertrophy, degenerative L5-S1 neural foraminal narrowing/lateral recess narrowing due to degenerative changes, and facet joint arthritis. (AR 365-91, 1030-59.) Finally, plaintiff denies the reason he initially stopped working is relevant to his functioning more than a decade later.

The ALJ did not reject Werve's opinion solely with consideration of her status as an other

source. The ALJ provided a specific, germane reason in finding the opinion inconsistent with the medical evidence. *Tommasetti*, 533 F.3d at 1041; 20 C.F.R. § 416.927(c)(4). The ALJ's conclusion has the support of substantial evidence, including the largely normal examination findings of a physician the day after Werve rendered her opinion (AR 606 (normal station, able to stand from seated position, initiate gait, walk on heals and toes symmetrically, limbs show normal bulk, tone, and strength symmetrically)), and a rational interpretation of mild radiographic findings (*see* AR 374, AR 387-91 ("Mild degenerative changes in the lumbar spine. No evidence of focal disc herniation or canal stenosis. There is moderate right foraminal encroachment secondary to facet arthropathy at L5-S1.")) The ALJ also reasonably contrasted Werve's statement plaintiff had been "unable to work for several years" with the fact he left his last employment for reasons entirely unrelated to any impairment. *See* 20 C.F.R. § 416.927(c)(6) (ALJ may consider any factor that tends to support or contradict a medical opinion).

D.     Other Physician

On December 11, 2014, an unnamed Washington Department of Social and Health Services Community Services Office (CSO) physician opined plaintiff could perform less than sedentary work, with severely limited motor skills. (AR 161-62, 170-71.) The ALJ found the opinion inconsistent with the medical record and gave it little weight. (AR 41.) Plaintiff's consistently mild examination findings did not support a sedentary work level, and it did not appear the physician was aware of the medical record as a whole. The ALJ also observed plaintiff "had only a brief treating relationship with the source." (*Id*.)

Plaintiff maintains the ALJ grossly mischaracterized the record and that the "facially invalid, boilerplate language is neither specific nor legitimate." (Dkt. 13 at 14.) The Court finds no error. The ALJ gave considerable weight to the contradictory opinions of non-examining State

agency physicians Drs. Guillermo Rubio and Gordon Hale that plaintiff could perform light work with postural and environmental limitations, finding consistency with the mild physical examination findings.  (AR 40, 166-68, 183-85.)  The ALJ's interpretation of the record as inconsistent with a limitation to less than sedentary work is rational and supported by substantial evidence, and serves as a specific and legitimate reason for rejecting the physician's opinion.  *See Tommasetti*, 533 F.3d at 1041.  The ALJ also properly considered the extent to which this medical source was familiar with information in the record.  20 C.F.R. § 416.927(c)(6).

<u>Step Two</u>

Plaintiff avers error in the ALJ's failure to identify as severe:  lumbosacral radiculopathy; history of traumatic brain injuries/post-concussion syndrome; fibromyalgia; PTSD; and bipolar disorder.  He points to medical records and opinions regarding these conditions as establishing their severity (*see* AR 365-91, 556, 1030-59, 1187, 1295, 1297, 1299) and harmful error in that resulting limitations preclude his ability to work.  He also argues the improperly rejected impairments formed, at least in part, the basis for the improperly rejected medical opinions.

At step two, a claimant must make a threshold showing his medically determinable impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless clams."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Id*. (quoting SSR 85-28).  Neither a diagnosis, nor symptoms establish a severe impairment.  *See* 20 C.F.R. § 416.921; SSR 96-4p; *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  A claimant must show his medically determinable impairments are severe.  20 C.F.R.

§ 404.1521. Also, an error in failing to find an impairment severe is harmless where associated limitations are considered at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ found step two in plaintiff's favor and proceeded to consider the medical evidence and every medically determinable impairment, whether severe or not, in reaching his conclusion at step four. (AR 30.) The mere absence of a step two finding of severity does not establish error. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC."; finding no error where ALJ considered all impairments, whether severe or not, at step four, and no prejudice given that step two was decided in claimant's favor) (internal citation omitted). Nor did the ALJ err in adopting broader or different labels for various impairments. *See Buck*, 869 F.3d at 1049 (finding no harmful error where ALJ identified a severe "personality disorder" rather than "antisocial personality disorder" given the absence of indication the ALJ misunderstood the nature of the claimant's impairments). The ALJ, for example, reasonably identified and discussed as severe impairments mild lumbosacral degenerative disc disease, including a diagnosis with lumbar radicular pain, and diagnoses of "multiple affective and anxiety disorders, as well as a personality disorder," including the involvement of manic episodes. (AR 30-31.) The ALJ also considered fibromyalgia. While noted in past medical records (AR 604), there was no current diagnosis or evidence of a diagnosis meeting the standards of SSR 12-2p and supporting the existence of a medically determinable impairment. Finally, and as discussed above, the ALJ properly assessed the medical opinion evidence. The ALJ did not err either at step two or in adopting functional limitations at step four.

<u>Step Three</u>

Plaintiff avers step three error in the failure to give weight to Dr. Nelson's opinion he met

the criteria for listings 12.04 and 12.06, and in relying on the contrary opinions of Drs. Comrie and Clifford without any explanation or discussion of Dr. Nelson's opinion. The ALJ, however, properly relied on the opinions of Drs. Comrie and Clifford as supporting his step-three conclusion and provided specific and legitimate reasons for rejecting the contrary opinion of Dr. Nelson. (AR 34-35, 39-40.) The mere fact the ALJ discussed Dr. Nelson's opinion in evaluating the medical evidence at step four, rather than at step three, does not support a finding of harmful error. *See generally Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted).

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record. Contrary to plaintiff's contention, the ALJ provided specific, clear, and convincing reasons in

---

[3] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

ORDER
PAGE - 15

support of that conclusion.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id*.; 20 C.F.R. § 416.1529(c)(4). An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ may consider that, contrary to a claimant's allegation, the medical evidence reflects improvement. *See Morgan*, 169 F.3d at 599-600. An ALJ also properly considers evidence associated with a claimant's treatment, 20 C.F.R. § 416.929(c)(3), SSR 96-7p and SSR 16-3p, including conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *accord Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

Plaintiff points to the record as reflecting numerous abnormal physical examination findings. He argues the ALJ failed to explain how his headaches are not disabling based on a single appointment with a specialist, and ignored numerous symptoms and findings, such as the post-craniotomy abnormal CT scan. He denies the record shows his stable and improved mental health or mild findings.

The ALJ provided a detailed discussion of the medical evidence, with numerous citations to the record supporting his conclusions. He found, for example, mild to normal physical examination findings, after the craniotomy and otherwise, non-severe and mild MRI/x-ray results, and treatment for plaintiff's back consisting of home physical therapy exercises and weight reduction. (AR 37 (citations omitted).) The ALJ relied on evidence from a headache specialist

and Dr. Steege's opinion alleged symptoms were unrelated to the craniotomy, and reasonably found a lack of consistency with plaintiff's allegation of head pain and other symptoms so severe he could not work. Finally, and as discussed in relation to Dr. Nelson, the ALJ contrasted plaintiff's allegation his mental health had worsened with evidence showing it had improved and mild findings on examination. The ALJ reasonably found, for example, the fact plaintiff was thinking about going back to school and being in a classroom with others for an hour or more at a time inconsistent with his allegation his poor coping skills causing him to "rage", as well as his alleged inability to sit for any length of time. (*Id*.) The ALJ therefore provided specific, clear, and convincing reasons to discount plaintiff's testimony by pointing to a lack of support in and inconsistency with the record, conservative treatment, and improvement.

An ALJ also properly considers inconsistencies between a claimant's testimony and evidence of his conduct and daily activities. *Bray*, 554 F.3d at 1227. An ALJ may "engage in ordinary techniques of credibility evaluation," including inconsistencies in a claimant's testimony and reporting. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), and *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ found some of plaintiff's activities not consistent with his allegations. Plaintiff testified, for example, he did "'little things'" during the day and could not mop the floor, make the bed, vacuum, clean litter boxes, bend over, lift, or do yard work. (AR 38.) Yet, plaintiff reported to his treating provider he was able to repair a dresser and deep clean his home. This was inconsistent with his allegation he could only do little things and could not work due to pain in his back, head, neck, side, and left leg. Repairing a dresser involves "a lot of crouching, bending, stooping, and lifting using his back, trunk, and extremities." (*Id*.) Further, plaintiff's report of riding his motorcycle as recently as March of 2016 was inconsistent with his testimony he no

longer rode his motorcycle, and his allegation of inability to work due to debilitating physical pain secondary to his back and right knee impairments. "[R]iding a motorcycle requires a not insignificant amount of strength, balance, and stamina." (*Id.*)[4]

Plaintiff inaccurately depicts the ALJ's decision as merely citing a number of activities without identifying how they are inconsistent with his allegations. The ALJ clearly identified and discussed inconsistencies between plaintiff's testimony and evidence of his activities. Plaintiff argues the ALJ overlooked the fact he was not held to any standard in performing such activities. However, activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ here properly considered evidence of activities contradicting plaintiff's testimony as to the degree of his impairment. *See also Molina*, 674 F.3d at 1112-13 ("While a claimant need not '"vegetate in a dark room"' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted).

The ALJ also noted plaintiff's testimony he had looked for work in construction, was turned down by an employer who told him he was too old and would not be covered by the

---

[4] As reflected in the Commissioner's brief, the record contains other evidence of plaintiff's physical activities. (*See, e.g.*, AR 1211 (plaintiff "building things such as a bench a little bit at a time" after step-dad gave him an air compressor and tools); AR 1209 ("working on projects around the house"); AR 1213 ("Worked on motorcycles while at his dad's & this also helped him to cope appropriately."); AR 1207 ("No current projects around house due to lack of ability to afford materials.")) This does not constitute an improper post hoc rationalization in that it is offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).

employer's insurance, and that he would have taken the job had it been offered.  (AR 41.)  The ALJ observed that, taken as a whole, he saw "a claimant who left work voluntarily to come back to Whidbey Island to care for his mother, . . . was out of the workforce for many years[,]" and "sustained some physical and psychological impairments during that time which limit his ability to return to work."  (*Id*.)  While possibly not present on Whidbey Island, jobs existed in significant numbers in the regional and national economies, plaintiff "can ride his motorcycle, perhaps to Fresno California and back, and when he takes his medications, the evidence has shown that his mental health symptoms are well controlled."  (*Id*.)  The ALJ, in so doing, also properly considered evidence of plaintiff's work history, *Smolen*, 80 F.3d at 1284, and attempts to find employment, *Bray*, 554 F.3d at 1221, 1227.

Lay Testimony

Plaintiff's father, Gary Iness, completed a function report dated January 2, 2015.  (AR 289-96.)  The ALJ gave it little weight, stating:  "Mr. Iness was not able to provide much detail into the claimant's impairments and functional abilities."  (AR 41.)  "For example, Mr. Iness responded a number of times throughout the third-party function report that he did not know the answer."  (*Id*.)  The ALJ also noted Mr. Iness is not an acceptable medical source.

The mere fact a lay witness is not an acceptable medical source is not a sufficient reason to discount lay testimony.  Lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  It may be rejected with the provision of a reason germane to the source.  *Smolen*, 80 F.3d at 1288-89.

The ALJ accurately observed the lack of detail provided and the inability to answer questions.  Mr. Iness could not, for example, answer questions as to plaintiff's ability to prepare

his own meals, how long it takes him to perform chores or to shop, how often he engaged in his hobbies and interests, whether he needed to be reminded to go places, or how far he could walk before needing to stop and rest. (AR 291-94.) The value of lay testimony lies in the ability of the witness "to observe a claimant's symptoms and daily activities[.]" *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ here reasonably discounted the lay testimony given the apparent inability to provide detailed, first-hand information regarding plaintiff's functioning.

Further, any error in the consideration of the lay statement would properly be deemed harmless. Mr. Iness did not describe any limitations beyond those described in plaintiff's testimony and the specific, clear, and convincing reasons for discounting plaintiff's testimony apply equally well to the lay testimony. *Molina*, 674 F.3d at 1115, 1117-22.

<u>Prior ALJ Decision</u>

While res judicata creates a presumption of non-disability in a period subsequent to an unfavorable ALJ decision, such presumption may be overcome with a showing of "changed circumstances." *Lester*, 81 F.3d at 827. *Accord Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988); Acquiescence Ruling (AR) 97-4(9). If the presumption is rebutted, certain findings in the prior, final decision must be adopted unless there is new and material evidence relating to those findings or a relevant change in law or methodology. *See Chavez*, 844 F.2d at 694.

The ALJ stated that, while plaintiff has changed circumstances, the presumption of continuing non-disability created by the prior unfavorable ALJ decision had not been rebutted. (AR 26.) Plaintiff argues the ALJ improperly invoked the *Chavez* presumption given the updated medical records and opinions, the lay statement, and his changed age category, and the ALJ's own finding of changed circumstances.

However, as the Commissioner explains, plaintiff fails to show any harm. Immediately

after stating plaintiff had not rebutted the presumption of non-disability, the ALJ stated: "Even apart from that application of the Chavez presumption, I separately find that the claimant is not disabled." (*Id.*) The ALJ proceeded to make independent findings based on the current record, with consideration of changed circumstances, at every step of the sequential evaluation. (AR 31 (plaintiff showed changed circumstances in his experience of additional limitations from severe impairments); AR 41 (reaffirming the prior ALJ's review of medical history from September 22, 2010 to November 6, 2012 and stating newly presented evidence post-dating the prior decision shows additional physical impairments and limitations); and AR 43 (finding changed circumstances material to determination of disability, but also that plaintiff can perform other work with the assessed RFC, and, thus, plaintiff had "not rebutted the presumption of continued disability.")) Any error in the ALJ's invocation of the *Chavez* presumption is harmless because it was "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (cited sources omitted).

<u>Step Five</u>

Plaintiff avers error at step five given the ALJ's reliance on an RFC and hypothetical to the VE failing to account for his limitations. However, the Court finds no error in the assessment of the medical evidence, symptom testimony, and lay testimony and, therefore, no error in the resulting RFC and VE hypothetical. This restating of plaintiff's arguments does not establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

/ / /

/ / /

/ / /

/ / /

ORDER
PAGE - 21

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>24th</u> day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge